## AFFIDAVIT

I, Brendan Donlan, having been duly sworn, do hereby depose and state as follows:

### Agent Background

1.  I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been so employed since 2009. I am currently assigned to the FBI's Boston Field Office and to the Corporate and Securities Fraud group within that office. My duties include the investigation of violations of federal law, including investment fraud, money laundering, mail fraud, wire fraud, and other financial crimes. I received training at the FBI Academy in Quantico, Virginia in a variety of investigative and legal matters.

### Purpose of Affidavit

2.  I am investigating Ariel LEGASSA ("LEGASSA") for possible violations of several federal criminal statutes, including but not limited to 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), 1344 (bank fraud) and 1957 (money laundering).

3.  As set forth below, I have probable cause to believe that LEGASSA devised a scheme to defraud the New England Sports Network ("NESN") and caused NESN to send him, via United States mail, $575,500. I make this affidavit in support a criminal complaint charging LEGASSA with mail fraud, in violation 18 U.S.C. § 1341, and in support of an arrest warrant for LEGASSA.

4.  This affidavit is based on my personal knowledge, information provided to me by other law enforcement officers and federal agents, and my review of records described herein. This affidavit is not intended to set forth all of the information that I have learned during this investigation but includes only the information necessary to establish probable cause for the requested complaint.

## Probable Cause

### Relevant Individuals and Entities

5.      LEGASSA is a resident of Burlington, Connecticut. LEGASSA was employed as Vice President of Digital at NESN from September 2019 until January 2022. He was responsible for sourcing, supervising, and approving payments to vendors working on digital media projects for NESN.

6.      NESN is a regional sports network in New England that creates and distributes New England sports content. NESN is located in Watertown, Massachusetts.

7.      Alley Interactive LLC ("Alley NY") is a digital services business that provides website design and development. Alley NY does not have a physical office, but maintains a mailing address in New York, New York.

8.      Alley Interactive LLC ("Alley CT") is a Connecticut Limited Liability Company that LEGASSA formed on February 11, 2021. Alley CT has a mailing address in Stamford, Connecticut (the "Stamford Address"). Alley CT does not engage in any actual business.

### Overview of the Scheme

9.      From approximately December 2020 to January 2022, LEGASSA orchestrated a scheme to defraud NESN. As LEGASSA negotiated a legitimate contract with Alley NY to provide web development services for NESN, LEGASSA simultaneously created a fictitious business, Alley CT, that he then used to receive fraudulent payments from NESN. During the pendency of the contract between Alley NY and NESN, in addition to approving legitimate invoices from Alley NY, LEGASSA created and approved several fake invoices from Alley CT. LEGASSA misrepresented to NESN that Alley CT was part of the legitimate contract involving Alley NY. Instead, Alley CT was a company that LEGASSA created, controlled, and that had no

real business purpose.  In all, NESN paid Alley CT $575,500.  LEGASSA deposited these funds into a bank account in the name of Alley CT that he controlled.

10. As detailed below, LEGASSA then transferred a large portion of the fraudulently obtained funds into other bank accounts that also appear to have been under his control. LEGASSA also spent the funds on personal expenses, such as car, tax, and credit card payments.

### The Scheme to Defraud NESN

11. Beginning in or around December 2020, LEGASSA and NESN entered into contract negotiations with Alley NY to provide software and web development services.

12. On or about March 3, 2021, NESN and Alley NY finalized and signed a Master Services Agreement (the "Agreement") and associated Statement of Work (the "SOW"). LEGASSA signed both the Agreement and the SOW on behalf of NESN.

13. During the negotiations between NESN and Alley NY, LEGASSA took the following steps to create Alley CT:

   a. On or about February 8, 2021, LEGASSA appears to have created the email address "alleyinteractivellc@gmail.com."  The recovery email address for this account contains a version of LEGASSA's full name.

   b. On or about February 11, 2021, LEGASSA incorporated Alley CT with the Connecticut Secretary of State.  According to the Certificate of Organization, LEGASSA is the only listed "Manager or Member" and "Organizer" of the business.  LEGASSA listed alleyinteractivellc@gmail.com as Alley CT's email address.

   c. On or about February 19, 2021, LEGASSA opened a bank account in the name of Alley CT at Santander Bank (the "Santander Account").  LEGASSA listed himself

as the business owner and provided his Connecticut Driver's License as proof of identification. LEGASSA is the only signatory on the account. LEGASSA also listed the alleyinteractivellc@gmail.com email address as Alley CT's email address.[1]

14. Based on the on the investigation to date, I understand that LEGASSA sent all invoices from both Alley NY and Alley CT to an employee at NESN in the accounting department ("Employee 1"). In his role as Vice President of Digital, LEGASSA had authority to approve all invoices up to $50,000. Any invoices greater than $50,000 also required approval from NESN's Chief Financial Officer. After an invoice had been approved, Employee 1 then issued a physical check that was sent via United States mail to either Alley NY or Alley CT.

15. On March 9, 2021, less than one week after entering into the Agreement and SOW with Alley NY, LEGASSA emailed two invoices on behalf of Alley CT to Employee 1. The invoices totaled $110,000. LEGASSA directed Employee 1 to issue payment to Alley CT at the Stamford Address. On or about April 1, 2021, NESN mailed a $110,000 check to Alley CT.

16. On April 8, 2021, LEGASSA sent an email to Employee 1 directing Employee 1 to establish two separate accounts for "Alley" in NESN's internal accounting program—one for Alley NY and another for Alley CT. In his email, LEGASSA wrote that Alley NY had "two entities working together but separately incorporated. They plan to merge the two entities at the

---

[1] In connection with the account opening, LEGASSA provided Santander with a letter from the Internal Revenue Service ("IRS") dated February 12, 2021, documenting the assignment of an Employment Identification Number ("EIN") to Alley CT. The letter from the IRS is addressed to "Alley Interactive LLC Ariel LEGASSA Sole Mbr [sic]" and lists the Stamford Address. Accordingly, based on my training and experience, and the investigation to date, I have reason to believe that LEGASSA applied for an EIN for Alley CT around this time in February 2021.

end of the year, and they asked me to please create a separate account and sent[sic] payment separately until then." This representation was false, as Alley NY did not have two separate entities working on the project with NESN. In a follow-up email, LEGASSA explained that going forward, he would provide instructions to Employee 1 as to whether invoices should be billed to Alley CT or Alley NY.

17. In all, between on or about March 9, 2021 and January 2, 2022, LEGASSA sent Employee 1 approximately eleven purported invoices from Alley CT for payment. The invoices from Alley CT resembled the invoices from Alley NY in that both used Alley NY's corporate logo. However, the invoices from Alley CT listed the Stamford Address, whereas the invoices from Alley NY listed a New York address.

18. Between approximately April 1, 2021 and November 23, 2021, NESN mailed seven checks totaling $575,500 to Alley CT at the Stamford Address:

| Approximate Date | Check Amount |
|---|---|
| 4/1/21 | $110,000 |
| 4/27/21 | $135,000 |
| 6/15/21 | $85,000 |
| 6/24/21 | $100,000 |
| 8/24/21 | $48,500 |
| 10/5/21 | $48,500 |
| 11/23/21 | $48,500 |

19. All these checks were deposited into the Santander Account. I have reviewed bank surveillance from October 15, 2021 and December 3, 2021 that appears to reflect LEGASSA depositing checks at a Santander branch. Based on my review of the Santander Account statements, I understand that on each of the days, LEGASSA deposited a check from NESN into the Santander Account, and that this was the only activity from each day that took place at a Santander branch.

20.     In or around January 2022, NESN learned of LEGASSA's scheme to receive payments through Alley CT. On January 6, 2022, NESN terminated LEGASSA's employment. On January 19, 2022, NESN filed an amended civil complaint against LEGASSA in the United States District Court for the District of Massachusetts alleging, among other things, fraud, conversion, and unfair and deceptive business practices. *See NESN v. LEGASSA et al.,* 22-CV-10024-ADB) (D. Mass.).

### Review of the Santander Account

21.     In connection with the investigation, I have reviewed the Santander Account. As noted above, LEGASSA opened the account in February 2021. Between February 2021 and January 2022, the only deposits into the Santander Account were the NESN checks issued to Alley CT, a $100 account opening deposit, and a $4,000 deposit on May 20, 2021.

22.     As of January 11, 2022, approximately five days after LEGASSA was terminated from NESN, there was only $578.29 in the Santander Account.

23.     After depositing the funds from NESN into the Santander Account, LEGASSA wired the money to different accounts under his control or spent the money on personal expenses:

   a. Between April 16, 2021 and December 7, 2021, LEGASSA wired approximately $156,000 to an account at the American Broadcast Employees Federal Credit Union. "Ariel LEGASSA" was listed as the beneficiary of these wire transfers.

   b. On October 4, 2021, LEGASSA wired $20,000 to an account at Citibank in his name. LEGASSA is the only signatory on the Citibank account.

   c. On April 16, 2021, LEGASSA obtained an "Official Check" from Santander for $49,777.03 to pay off an auto loan with Wells Fargo Bank.

   d. LEGASSA made repeated payments to Citibank, American Express, Capital One,

and Discover. Based on my training and experience investigating financial crimes, I have reason to believe that these were likely credit card payments.

## Conclusion

24. Based on the information described above, and my training and experience, I have probable cause to believe that on or about April 27, 2021, LEGASSA, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did, for the purpose of executing and attempting to execute the scheme, knowingly cause to be delivered by mail and by any private and commercial interstate carrier according to the direction thereon, a $135,000 check, in violation of Title 18, United States Code, Section 1341.

Sworn to under the pains and penalties of perjury.

Brendan Donlan
Special Agent
Federal Bureau of Investigation

Sworn to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 on January 31, 2022      12:47 p.m.

HON. DAVID H. HENNESSY
United States Magistrate Judge