UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.   22-CR-10038-IT |
| | ) | |
| ARIEL LEGASSA | ) | |

**Defendant's Motion For Order Releasing Seized Assets for
Payment of Necessary Living Expenses and Legal Defense Costs**

Defendant Ariel Legassa hereby moves, pursuant to the Fifth and Sixth Amendments to the United States Constitution, for an order releasing $46,000 seized by the government, which are untainted funds needed to pay reasonable and necessary living expenses and to retain criminal defense counsel of his choice (the "Funds").

As a result of widespread publicity about this fraud prosecution, a companion civil case brought by the alleged victim of the purported fraud, Mr. Legassa's former employer New England Sports Network, L.P. ("NESN"), and NESN's termination of Mr. Legassa's employment, he has been unable to obtain employment commensurate with his experience and value. He has been able to find work only as a driver for Uber. As a result, the Legassa family's reasonable and necessary monthly living expenses exceed the family's monthly income.

Mr. Legassa cannot make up the difference by liquidating assets. He has no assets that have not been seized by the government and/or pledged to secure the appearance bond the court required as a condition of release. Access to the Funds is also essential to Mr.

1

Legassa's ability to retain counsel of his choice and to present a legal defense in this criminal case.

The court should order the release of the Funds because the government cannot establish probable cause to believe that the Funds are traceable or otherwise sufficiently related to the crime charged in the indictment. *See Kaley v. United States,* 571 U.S. 320, 324 at n.3 (2014) (noting that lower courts "have uniformly allowed the defendant to litigate ... whether probable cause exists to believe that the assets in dispute are traceable or otherwise sufficiently related to the crime charged in the indictment," and that the government "agreed that a defendant has a constitutional right to a hearing on that question"). The court should release the $46,000.

**Procedural Background**

On January 6, 2022, NESN accused Mr. Legassa, its VP of Digital, of stealing more than $500,000 in company funds and terminated Mr. Legassa's employment. The next day, NESN, a private company with hundreds of millions of dollars in annual revenues that has been ranked as the eighth most valuable sports franchise in the world,[1] filed a civil action in

---

[1] "NESN Named Eighth Most Valuable Sports Business in the World," Oct. 13, 2013, available at https://nesn.com/2013/10/nesn-named-eighth-most-valuable-sports-business-in-the-world/ . In 2021, NESN was valued at $650 million and Fenway Sports Group, which includes NESN, was ranked as the fourth most valuable sports empire. *See* "The Most Valuable Sports Empires - And the Teams That Make Them Rich," Yahoo, Feb. 17, 2021, available at https://www.yahoo.com/video/most-valuable-sports-empires-teams-000042480.html.

this court and obtained *ex parte* orders of attachment by trustee process on bank accounts maintained by Mr. Legassa and/or his wife that contained a total of less than $80,000.[2]

Six weeks later, federal agents swarmed Mr. Legassa's home in Connecticut, arrested him, and took him into custody pursuant to a criminal complaint alleging that he defrauded NESN. He was released on conditions that included a $75,000 appearance bond secured by the titles to two family vehicles, a 2020 Tesla Model 3 and a 2012 Land Rover LR3, and by the registration to a 1972 single engine propeller airplane. *See* Appearance Bond, USDC CT Criminal No. 3:22mj104 RAR. On February 17, 2022, he was indicted on mail fraud and money laundering charges.

The government did not seize any assets of Mr. Legassa or his wife at the outset of this case. Almost two months later on March 29, 2022, the government obtained warrants to seize the Tesla, the plane, and $46,000 of the roughly $80,000 in Mr. Legassa's wife's account. The money was seized that day and the Tesla and plane were seized on April 11, 2022. *See* Dkt. No. 34, United States' Bill of Particulars for Forfeiture Assets.[3]

**Argument**

1. **Legal Basis for the Requested Post-Restraint Hearing**

Mr. Legassa's ability to pay for ordinary and necessary living expenses until the conclusion of his trial is of "paramount importance." *See United States v. Jones,* 160 F.3d 641, 646 (10th Cir. 1998) (citing *United States v. Harvey,* 814 F.2d 905, 928 (4th Cir. 1987), *rev'd en*

---

[2]   NESN's civil suit is *New England Sports Network, L.P. v. Alley Interactive LLC (CT) and Ariel Legassa*, USDC MA Civil No. 22-CV-10024-ADB.

[3]   Mr. Legassa does not at this time seek the release of the Tesla or the plane.

3

*banc on other grounds,* 837 F.2d 637 (4th Cir. 1988), *aff'd, Caplin & Drysdale, Chartered v. United* States, 491 U.S. 617 (1989). "A restraining order that prevents a defendant from supporting herself and her family pending and during trial would likely work an injustice with constitutional implications." *United States v. Thier,* 801 F.2d 1463, 1477 (5th Cir. 1986) (Rubin, J., concurring) (suggesting that such a result "shocks the judicial conscience"), *amended by* 809 F.2d 249 (5th Cir. 1987). Courts have held that a defendant is entitled to a hearing where he makes a threshold showing that he has insufficient assets remaining after seizures to pay for necessary living expenses. *See United States v. Kahn,* 890 F.3d 937 (10th Cir. 2018) ("The issue ... must be whether the unseized assets are adequate to provide 'for reasonable legal and living expenses.' If not, a hearing is justified upon a prima facie showing that seized assets are not traceable to the charged offense.") (quoting *Jones,* 160 F.3d at 649).

A defendant's Sixth Amendment right to the assistance of counsel is also "fundamental." *Luis v. United States,* 136 S.Ct. 1083, 1088, (2016) (quoting *Powell v. Alabama,* 287 U.S. 45, 68 (1932)). "[T]he Sixth Amendment grants a defendant 'a fair opportunity to secure counsel of his own choice.'" *Id.* at 1089 (quoting *Powell,* 287 U.S. at 53; *Caplin & Drysdale, Chartered,* 491 U.S. at 624; *see also United States v. Gonzalez-Lopez,* 548 U.S. 140, 150 (2006). Mr. Legassa has a vital interest in retaining counsel of his choice that is derived from the Sixth Amendment to the Constitution. *See Kaley,* 571 U.S. at 335-38. So essential is this right that it can trump many of the government's competing interests to restrain a defendant's assets. *See United States v. Farmer,* 274 F.3d 800, 804 (4th Cir. 2001). This is so for the most basic of reasons - the accused is presumed innocent, and unless and until the government bears the weighty burden of demonstrating his guilt beyond a

reasonable doubt, he may use "wholly legitimate funds" not allegedly involved in the offenses for legal representation of his own choosing. *Id.* To impede this interest would work a permanent deprivation on Mr. Legassa, as he "needs [his chosen] attorney now if the attorney is to do him any good." *United States v. Moya-Gomez,* 860 F.2d 706, 731 (7th Cir. 1988), *cert. denied,* 492 U.S. 908 (1989).

The procedural mechanism by which a defendant may seek access to funds restrained by the government prior to trial is a *Monsanto* hearing. In *United States v. Monsanto,* the Supreme Court held that the pretrial restraint of a defendant's assets is constitutional so long as it is "based on a finding of probable cause to believe that the property will ultimately be proved forfeitable." 491 U.S. 600, 615 (1989). " That determination has two parts, reflecting the requirements for forfeiture under federal law: There must be probable cause to think (1) that the defendant has committed an offense permitting forfeiture, and (2) that the property at issue has the requisite connection to that crime." *Kaley,* 571 U.S. at 323 (citing *Monsanto,* 491 U.S. at 615 n.10).

Although *Monsanto* declined to consider 'whether the Due Process Clause requires a hearing' to establish either or both of those aspects of forfeitability," the Court in *Kaley* noted that lower courts "have uniformly allowed the defendant to litigate the second issue stated above: whether probable cause exists to believe that the assets in dispute are traceable or

otherwise sufficiently related to the crime charged in the indictment." *Id.* at 324.[4] The Court noted that "[a]t oral argument, the Government agreed that a defendant has a constitutional right to a hearing on that question," and the Court would therefore not opine on the issue. *Id.* at 324, n.3. Having agreed that a defendant possesses a constitutional right to such a hearing, the doctrine of judicial estoppel prevents the government from changing course here.[5]

---

[4] *See, e.g., United States v. Monsanto,* 924 F.2d 1186, 1203 (2d Cir.1991) ("[T]he Fifth and Sixth amendments, considered in combination, require an adversary, post-restraint pretrial hearing as to probable cause that (a) the defendant committed crimes that provide a basis for forfeiture, and (b) the properties specified as forfeitable in the indictment are properly forfeitable, to continue a restraint of assets (i) needed to retain counsel of choice and (ii) ordered ex parte pursuant to 21 U.S.C. §853(e)(I)(A)"); *United States v. All Funds on Deposit in Account Nos.94660869, 9948199297, 80007487,* No. 10-CV-4858(BSJ)(JCF), 2012 WL 2900487 at *1 (S.D.N.Y. 2012); *Moya Gomez,* 860 F.2d at 731; *United States v. Harvey,* 814 F.2d 905,928 (4th Cir. 1987), *superseded as to other issues, In re Fo,feiture Hearing as to Caplin & D,ysdale,* 837 F.2d 637 (4th Cir. 1988) *(en bane), aff"d,* 491 U.S. 617 (1989); *Thier,* 80 I F.2d at 1466-70 (holding hearing required as a matter of statutory interpretation), *modified,* 809 F.2d 249 (5th Cir. 1987); *United States v. Crozier,* 777 F.2d 1376, 1383-84 (9th Cir. 1985); *United States v. Lewis,* 759 F.2d 1316, 1324-25 (8th Cir. 1985), *cert. denied,* 474 U.S. 994 (1985); *United States v. Spilotro,* 680 F.2d 612, 616-19 (9th Cir. 1982); *United States v. Long,* 654 F.2d 911, 915-16 (3d Cir. 1981); *United States v. E-Gold, LTD,* 521 F.3d 411, 4 I 9 (C.D.C. 2008) (holding that defendants have a right to an adversary post-restraint, pretrial hearing for the purpose of establishing whether there was probable cause as to the defendant[s'] guilt and the forfeitability of the specified assets needed for a meaningful exercise of their rights to counsel).

[5] *See, e.g., Boston Gas Co. v. Century Indem. Co.,* 708 F.3d 254,261 (1st Cir. 2013) ("Judicial estoppel is an equitable doctrine that 'prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding'") *(quoting InterGen N.V. v. Grina,* 344 F.3d 134, 144 (I st Cir. 2003)). The "primaiy purpose" of the doctrine of judicial estoppel "is 'to protect the integrity of the judicial process.'" *Id.,* quoting *New Hampshire v. Maine,* 532 U.S. 742, 749 (2001); *see also Alternative Sys. Concepts, Inc. v. Synopsis, Inc.,* 374 F.3d 23, 33 (1st Cir. 2004) ("The doctrine's primary utility is to safeguard the integrity of the courts by preventing parties from improperly manipulating the machinery of the justice system.").

Many courts have adopted the so-called *Jones-Farmer* rule to determine whether to grant a defendant a *Monsanto* hearing. *See United States vs. Bokhari,* No. 14-CR-30044-MGM, 2015 WL 7303535, at *3 (D. Mass. Nov. 19, 2015). In *United States v. Jones,* 160 F.3d 641, 645 (10th Cir. 1998), the Tenth Circuit held, "[a]s a preliminary matter, a defendant must demonstrate to the court's satisfaction that she has no assets, other than those restrained, with which to retain private counsel and provide for herself and her family." *Jones,* 160 F.3d at 647. In *United States v. Farmer,* the second case underlying this rule, the Fourth Circuit held that at the *Monsanto* hearing, the defendant must "prove by a preponderance of the evidence that the government seized untainted assets without probable cause and that he needs those same assets to hire counsel." 274 F.3d 800, 805 (4th Cir. 2001).

The Court should grant Mr. Legassa a *Monsanto* hearing because he has satisfied the first prong of the *Jones-Farmer* rule by detailing below and in the accompanying affidavits his need for the seized assets, and because he satisfies the second prong by making a *prima facie* showing that the seized assets are not traceable or otherwise involved in the charged offense.

### 2. Mr. Legassa Lacks Access to Any Other Assets With Which to Fund His Reasonable and Necessary Living Expenses or His Legal Defense

Although the First Circuit has not imposed a requirement that a defendant seeking a *Monsanto* hearing make a threshold showing of financial need, many other circuit courts have. *See United States vs. Bokhari,* No. 14-CR-30044-MGM, 2015 WL 7303535, at *3 (D. Mass. Nov. 19, 2015) (citing *United States v. Bonventre,* 720 F.3d 126, 129-32 (2d Cir. 2013) (holding that to obtain *Monsanto* hearing, defendant must make sufficient threshold

evidentiary showing that he does not have alternative unrestrained assets to fund counsel of choice); *United States v. Holy Land Found.for Relief & Dev.,* 493 F.3d 469,475 (5th Cir. 2007) *(en bane)* (holding that pretrial hearing may be required when defendant claims need for restrained assets to pay counsel or cover ordinary living expenses); *Jones,* 160 F.3d at 647 (holding that a defendant is entitled to a hearing upon a demonstration that there are no assets other than those restrained to pay for counsel and living expenses)).

Here, Mr. Legassa easily makes this showing. Attached as Exhibits 1 and 2 are affidavits from Mr. Legassa and his wife describing their current assets, liabilities, monthly income, and monthly living expenses. *See United States v. Patel,* 888 F. Supp. 2d 760, 770 (W.D. Va. 2012) (holding that defendant made a sufficient showing by way of "affidavits, documents, bills, and checks ... which allow[ed] the court to make a meaningful, independent assessment of [the defendant's] current inability to retain counsel without the use of restrained assets."). Together, the affidavits demonstrate that the reasonable and necessary monthly expenses incurred by the family far exceed the amount of current income. Nilda Legassa's monthly income of ▮▮▮▮ falls well short of the family's ordinary and necessary living expenses of ▮▮▮▮. *See* Ex. 1, A. Legassa Affidavit at ¶ 4; N. Legassa Affidavit at ¶¶ 7-9.[6]

The affidavits also demonstrate that Mr. Legassa has no assets that he can use to pay living expenses or for criminal defense counsel. *Id*. A. Legassa Aff. at ¶¶ 6-8.

---

[6]   The affidavits attached as Exhibit 1 were filed in the accompanying civil action in connection with the Motion By Defendants Ariel Legassa and Nilda Legassa To Dissolve Attachments and bear the caption from that action. The Legassa's had sought the release of the contents of Nilda Legassa's bank account, which had been attached by NESN ($77,236.77). NESN agreed to release $31,236.77, the balance of the Nilda Legassa account after the government's seizure and removal from the account of the $46,000.

### 3. The Government Has Not Established Probable Cause That the Funds Are Traceable to the Alleged Criminal Conduct

The government has seized the Funds pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C), which require a showing that the Funds are property that is "involved in a transaction or attempted transaction" in violation of money laundering statutes or that is "traceable to such property," (§ (a)(1)(A)), or that the property "constitutes or is derived from proceeds traceable" to the charged offense of mail fraud (§ (a)(1)(C)). The government has not made either showing here.

Legitimate funds commingled with proceeds or property involved in a specified charged offense like mail fraud are not automatically forfeitable, but *may* be forfeitable only under certain circumstances. *See Bokhari,* 2015 WL 4529611, at *6 (quoting *United States v. Coffman,* 859 F. Supp. 2d 871, 875 (E.D. Ky. 2012). These circumstances include, for example, "where the commingling is for the purpose of disguising the nature, location or source of the illicit funds." *Id.* Property that facilitates money laundering is forfeitable. only when the property is used to make the money laundering less difficult or more free from obstruction, hinderance, or detection. *Id.* (citing *United States v. McGauley,* 279 F.3d 62, 75-76). However, "facilitation requires that there be a substantial connection between the property and the underlying criminal activity." *Id.* (internal quotations removed).

Here, the government lacks probable cause to believe that the seized funds are traceable to proceeds of the charged mail fraud offense. The government alleges that between April 1, 2021 and November 23, 2021, Mr. Legassa defrauded NESN into depositing $575,500 into an account at Santander Bank in the name of Alley CT, an allegedly fictitious

9

business, and that Mr. Legassa controlled the Santander account. *See* Affidavit of Special Agent Brendan Donlan in Support of Applications for Seizure Warrants (the "Seizure Aff.") at ¶¶ 13-14. The government alleges that between April 16, 2021 and December 7, 2021, a total of $156,000 was transferred from the Santander account to a joint account in the name of Legassa and his wife at the American Broadcasters Federal Credit Union (the "750 Account"). *Id*. at ¶ 18. The government further alleges that a total of $46,000 was transferred from the 750 Account to an account in the name of Nilda Legassa (the "4170 Account"). *Id*. at ¶ 2 and 20. The government seized that amount from that account.

The problem for the government is that not all the funds deposited into the 750 account were allegedly tainted funds. NESN also deposited Mr. Legassa's legitimate salary and bonuses into that account. Between March 3, 2021 and January 5, 2022 (the period during which NESN alleges that it was defrauded), NESN direct deposited a total of ▉▉▉▉▉▉ in salary in the 740 Account. Between February 2021 and January 2022, NESN deposited an additional ▉▉▉▉▉▉ in bonuses into the 750 Account. The total amount NESN deposited into the 750 Account from January 1, 2021 to January 31, 2022 was ▉▉▉▉▉▉. *Id*. at ¶ 9.

The deposit of Mr. Legassa's salary and bonuses into the 750 Account are not proceeds of and cannot be claimed to have facilitated any criminal activity. Certainly, those deposits have no connection whatsoever - let alone a "substantial connection" - to the crimes charged. *See Bokhari,* 2015 WL 4529611, at *7.

The affidavit filed in support of the application for seizure warrants contains no alleged facts that support the government's claim that Mr. Legassa transferred tainted money from the

750 Account to the 4170 Account, as opposed to untainted salary and bonuses from legitimate sources. The government alleges, based solely on "the transaction history" described in the Donlan Aff., that the Funds it seized from the 4170 Account are proceeds of the charged mail fraud. *Id*. at ¶ 27. In other words, based solely on the timing of the transfers in and transfers out of the 750 Account, the Funds must be tainted. Timing alone does not amount to probable cause that tainted funds were transferred, especially where the amount of legitimate funds deposited into the 750 Account (█████████) far exceeded the amount of allegedly tainted funds deposited into that account ($156,000).

Additionally, the government has not established probable cause to believe that any tainted funds were involved with money laundering. Other than asserting that "probable cause exists to believe that $46,000 is proceeds traceable to … an offense in violation of 18 U.S.C. § 957," which is based solely on the account "transaction history as reflected in bank records," the affidavit in support of seizure of the Funds government does not even address a relationship to money laundering. *Id*. at ¶ 20. It does not allege that tainted and untainted funds were commingled for the purpose of facilitating money laundering, either in the 750 or the 4170 Accounts. Most notably, it does not allege anywhere that the transactions reflected in the bank records were made *for the purpose of* concealing the source of purportedly tainted assets.

Without alleging facts to support the claim that funds seized from the 4170 Account were tainted assets, the government cannot establish probable cause to believe that the funds

11

in those accounts are property constituting or derived from proceeds obtained directly or indirectly as a result of mail fraud. Without alleging facts to support the claim that legitimately obtained funds were commingled with illicitly obtained funds for the purpose of concealing the origin of the tainted funds, the government cannot establish probable cause to believe that the seized funds were involved with money laundering.  The seized funds should thus be released to Mr. Legassa in their entirety to permit him to pay for ordinary and necessary living expenses and for his legal defense.

## LOCAL RULE 7.1 CERTIFICATION

By exchange of emails on April 13, 2022, undersigned counsel conferred with counsel for the government in a good faith attempt to resolve or narrow the issues.  The parties were not able to narrow or resolve the issues.

## CONCLUSION

Wherefore, the defendant requests an evidentiary hearing pursuant to *Kaley* and *Monsanto,* and ultimately an order returning the seized funds to the defendant so that he may use them for payment of ordinary living expenses and to retain defense counsel of his choice.

ARIEL LEGASSA
 By his attorney,

/s/ *E. Peter Parker*
E. Peter Parker
 B.B.O. #552720
Law Office of E. Peter Parker
The Wheelhouse at Bradford Mill
Concord, MA  01742
(617) 742-9099
peter@parkerslaw.com

Certificate of Service

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 9, 2022.

/s/ *E. Peter Parker*
E. Peter Parker