UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>) Criminal No. 22-10038-IT<br>ARIEL LEGASSA, )<br>)<br>Defendant )<br>)<br>) | |

### ORDER ON MOTION FOR MONSANTO HEARING

September 21, 2022

Defendant Ariel Legassa moves for a Monsanto hearing in order to secure release of $46,000 seized post-indictment by the United States. Legassa argues that such funds are necessary to enable him to pay ordinary living expenses and counsel of his choice. For the reasons stated below, the motion is denied.[1]

**I.     The Grand Jury's Allegations and Related Civil Action**

On February 17, 2022, the grand jury returned an indictment charging Legassa with seven counts of mail fraud, and three counts of money laundering. [Dkt. No. 13]. According to the speaking indictment, NESN employed Legassa as Vice President of Digital, in which position he sourced, and approved payment to, digital media vendors. [Id. ¶ 3]. Legassa engaged a website designer, referred to in the indictment as Alley NY, to provide web development services. [Id. ¶¶

---

[1] In this criminal prosecution, the Court appointed counsel to represent Legassa. [Dkt. No. 9]. I appreciate there is tension between the determination that Legassa has failed to demonstrate need to warrant a Monsanto hearing and the determination he qualifies for appointment of counsel. However, the standard for determining whether counsel should be appointed is very different from the detailed showing required to obtain a Monsanto hearing, as discussed herein.

4-5]. At the same time, Legassa created a fictitious business, referred to in the indictment as Alley CT. [Id. ¶ 5]. Legassa submitted fraudulent invoices to NESN in the name of Alley CT which caused NESN to pay $575,000 to an account Legassa opened in the name of Alley CT. [Id. ¶ 5]. Thereafter, Legassa transferred these funds among accounts Legassa controlled and used them to satisfy personal obligations. [Id. ¶¶ 5, 9]. The indictment alleges that, upon conviction of mail fraud, Legassa shall forfeit any property which constitutes or is derived from the proceeds of mail fraud, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), and upon conviction of money laundering, Legassa shall forfeit any property which constitutes or is derived from the proceeds of money laundering, pursuant to 18 U.S.C. § 982(a)(1). [Dkt. No. 13 ¶¶ 26-29].

On January 7, 2022, NESN filed a civil complaint in this Court against Legassa and Alley CT for fraud, conversion, and misappropriation. See New England Sports Network, L.P. v. Alley Interactive LLC (CT) et al., 1:22-cv-10024-ADB (D. Mass. 2022). On January 19, NESN moved ex parte to attach bank accounts Legassa's wife held at the American Broadcast Employees Federal Credit Union (the "Credit Union"). See New England Sports Network, Dkt. No. 13. On that same date, Judge Burroughs granted the motion which resulted in the attachment of funds held at the Credit Union in an account ending in 4170 (the "4170 Account"). Id. at Dkt. No. 14.

On March 29, 2022, the United States seized $46,000 held in the 4170 Account. [Dkt. No. 34 ¶ a]. This money is the subject of the instant motion for a Monsanto hearing.

**II.     Applicable Law**

18 U.S.C. § 982(a)(1) provides "[t]he court, in imposing sentence on a person convicted of [Money Laundering], shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." Similarly, 18 U.S.C. § 981(a)(1) authorizes the civil forfeiture of "[a]ny property, real or personal, which

2

constitutes or is derived from proceeds traceable to … a specified unlawful activity." 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1), read together, identify mail fraud as a specified unlawful activity. Further, by incorporation, these statutes authorize the United States to seize assets pretrial to preserve their availability based on probable cause to believe they are forfeitable. See 18 U.S.C. §§ 981(b)(1), (2); 18 U.S.C. § 982(b)(1); 21 U.S.C. § 853(f).

In United States v. Monsanto, the Court held that pretrial restraint of a defendant's property is constitutional if supported by "a finding of probable cause to believe that the property will ultimately be proved forfeitable." 491 U.S. 600, 615 (1989). "That determination has two parts, reflecting the requirements for forfeiture under federal law: There must be probable cause to think (1) that the defendant has committed the offense permitting forfeiture, and (2) that the property at issue has the requisite connection to that crime." Kaley v. United States, 571 U.S. 320, 323-24 (2014) (citing 21 U.S.C. § 853(a)). Where, as here, the grand jury has returned an indictment, its probable cause finding is conclusive, and a defendant cannot challenge the first component of this probable cause determination. Id. at 331. However, since Monsanto, lower courts "have uniformly allowed the defendant to litigate the second issue stated above: whether probable cause exists to believe assets in dispute are traceable or otherwise sufficiently related to the crime charged in the indictment." Id. at 324.

While there is no controlling circuit precedent, other circuits have required a defendant seeking a Monsanto hearing to first demonstrate financial need. United States v. Bokhari, 14-30044-MGM, 2015 WL 7303535 at *4 (D. Mass. Nov. 19, 2015). See United States v. Bonventre, 720 F.3d 126, 131 (2d Cir. 2013) (defendant must first make a sufficient evidentiary showing that there are no sufficient, alternative, unrestrained assets to fund counsel of choice); United States v. Farmer, 724 F.3d 800, 804-05 (4th Cir. 2001) (due process required a hearing given there was a

3

threshold showing of the defendant's need for restrained assets to pay his attorneys); United States v. Jones, 160 F.3d 641, 647 (10th Cir. 1998) ("a defendant must demonstrate to the court's satisfaction that she has no assets, other than those restrained, with which to retain private counsel and provide for herself and her family."). The rationale for this threshold requirement, as the Second Circuit explained in Bonventre, is that a defendant's constitutional right to use his or her own assets to pay for counsel of choice "is not implicated unless the restraint actually affects the defendant's right to choose counsel and present a defense." 720 F.3d at 131. Legassa does not contest this threshold requirement. See [Dkt. No. 44 at pp. 6-7]. Rather, he asserts that he has shown need. In support of this Legassa has filed his memorandum with two affidavits, and a reply memorandum with a supplemental affidavit. [Dkt. Nos. 44, 56]

**III.   Analysis**

As an initial matter, there is some tension in arguments Legassa makes which cause me to question whether his Sixth Amendment right to counsel is actually implicated by the challenged seizure, and that Legassa is not, in fact, fully satisfied with court-appointed counsel.

Here, the Court determined that Legassa qualified for appointment of counsel and thus appointed Mr. Parker on February 2, 2022. On February 8, 2022, Legassa retained Mr. Parker to represent him in the related civil action. See New England Sports Network, Dkt. No. 21. While, as argued by the United States, this would suggest that Legassa is content to have Mr. Parker as appointed counsel represent him in the criminal case, Legassa avers in his February 22, 2022 affidavit his "intention [is] to retain counsel to represent [him] in the criminal matter." However, in his reply memorandum, Legassa writes: "Even where a defendant is content with the court's selection of counsel, that should not preclude the release of untainted seized assets to pay counsel." [Dkt. No. 56 at p. 4]. Legassa then goes on to argue that the release of the $46,000 would relieve

4

the taxpayers from funding his defense. [Id.] This statement and argument have two implications: first, they undermine a showing of need for funds to pay counsel of choice if Legassa is content with court-appointed counsel. Second, and relatedly, the statement and argument suggest that Legassa's constitutional right to use his own assets to pay for counsel of choice "is not implicated" here, where he has failed to show that the restraint actually affects his right to choose counsel. Bonventre, 720 F.3d at 131. In other words, if appointed counsel is counsel of choice, release of the $46,000 is, for Sixth Amendment purposes, unnecessary.

For the reasons discussed below, I deny the motion for a Monsanto hearing; but as a threshold matter, I am skeptical that the challenged seizure restrains Legassa's Sixth Amendment right to counsel of his own choosing.

### A. Legassa has Failed to Demonstrate Need

The United States argues that the Court should deny Legassa's motion for a Monsanto hearing because Legassa fails to demonstrate he is without assets to pay counsel or living expenses. Among other things, it argues that information in support of Legassa's motion is stale and fails to reflect his income as an Uber driver, fails to account for the assets of his wife, Nilda, and that the $46,000 which is the subject of Legassa's motion would, if released by the United States, still be unavailable to Legassa pursuant to a stipulation in the civil action.

#### 1. Income as an Uber Driver

Legassa has submitted one affidavit from his wife and one from himself which show a $3,100 shortfall between monthly expenses and monthly income. However, the affidavits are dated February 22, 2022, and reflect that Legassa is unemployed. The United States argues that Legassa's motion fails to report income he earned after February 22 as an Uber driver. In a supplemental affidavit dated September 15, 2022, Legassa asserts that he "remain[s] unable to find

employment commensurate with [his] experience and capabilities[,]" and that he has not earned income through Uber because the car he intended to use, a Tesla, was seized by the United States. [Dkt. No. 56-1 at p. 1]. Legassa avers, "I had intended to drive the Tesla, but the government seized it." [Dkt. No. 56-1 at ¶1]. He further avers that his other cars are used by his wife, and two of his four children for school, after-school activities, and work. Id.

I struggle to accept Legassa's representation that there is no income from Uber driving. In a motion to amend the conditions of his pretrial release filed on April 30, 2022, Legassa reported that he "had been driving the Tesla … for Uber[,]" and received calls for trips that "originate in his home state of Connecticut [and] terminate in New York." [Dkt. No. 31 at p. 2]. This session granted the motion to Legassa to drive for Uber into and from New York. [Dkt. No. 33]. All of this occurred after the United States seized the Tesla. Yet Legassa persisted in his motion to amend conditions so he could service fares terminating in New York. On this record, it appears that Legassa did in fact drive for Uber, whether using the Tesla or another car.

Apart from the record, Legassa fails to show why, with even limited access to the remaining three cars used by two children and his wife, he could not transport one of them to work or school and then use that car for Uber. Alternatively, Legassa could drive for Uber after hours, when his wife and children are at home. In sum, Legassa's motion fails to address his post-affidavit employment and income, and potential income, should he resume driving for Uber. This income may or may not eliminate the monthly shortfall, but the failure to address it is fatal to Legassa's demonstration of need.

### 2. The Availability of the Assets of Nilda Legassa

The United States also argues that Legassa fails to account for the assets of his wife Nilda

in assessing whether funds are needed to pay living expenses and his criminal defense. The affidavits Legassa filed report that Legassa's residence in Connecticut is held in the name of his wife. Yet neither the affidavits nor the motion provides a statement of Nilda's equity in the residence and why such equity cannot be used to finance counsel and living expenses. According to the United States, publicly available information values their home at $587,000. Similarly, Legassa does not report whether his wife has a retirement account or other sources of savings that can be reached to help cover the costs of counsel and living expenses.

Legassa argues that Nilda's assets are not germane to the calculation. He cites no law to support this proposition and, at least in this case, I find no reason to distinguish between Nilda's assets and Legassa's. Among other things, they reside and have resided together. They have four children together. According to the United States, Legassa used over $90,000 from the Alley CT account he allegedly opened and into which the alleged fraudulent $575,000 were deposited to pay off his own and his wife's personal debts, including $34,000 in credit card debt. [Dkt. No. 48 at pp. 5-6]. The Tesla, which the United States seized, is held in the name of Legassa and Nilda. Thus, there is substantial evidence that Legassa and Nilda share assets and liabilities, regardless of denomination of ownership.

In such a circumstance, a showing of need should account for the assets under Nilda's name to which Legassa also has access. See United States v. Bonventre, 720 F.3d 126, 133 (2d Cir. 2013) (finding that the defendant had failed to satisfy a showing of financial need necessary for a Monsanto hearing without a clearer statement as to whether he "has access to other accounts"); United States v. E-Gold, Ltd., 521 F.3d 411 (D.C. Cir. 2008) (finding a sufficient showing of financial need where one of the defendants provided an affidavit detailing his status as a potential beneficiary of a trust, his lack of other sources of income, his liquid and non-liquid assets, his

debts, his wife's income, and his dependents and assets held in the name of the dependents); United States v. Sullivan, 575 F. Supp. 3d 1, 5 (D.D.C. 2021) (finding the defendant's financial need showing inadequate where he "[did] not provide any further information relevant to his ability to pay [household expenses]"); United States v. Wood, 2016 WL 8131240, at *7 (E.D. Ky. Oct. 3, 2016) (citing Bonventre, 720 F.3d at 131 in finding that the defendant had substantiated his financial need in part as his PSR indicated both he and his wife were unemployed). Because Legassa fails to account for Nilda's assets, he has not demonstrated need to warrant a Monsanto hearing.

### B. The Availability of the $46,000

The United States also argues that the $46,000 which is the subject of this motion and which it has seized pretrial, if released, would, according to the terms of the parties' stipulation in the civil case, remain subject to the attachment of the 4170 Account and hence be unavailable to Legassa. In his reply, Legassa argues that the United States misreads the stipulation.

As briefly recounted above, in January, NESN filed its civil suit and obtained an order of attachment of funds held at the Credit Union, including in the 4170 Account (the January 19 Attachment). The record in the civil case shows that in June 2022, the parties stipulated to the partial dissolution of the January 19 Attachment. See New England Sports Network, Dkt. No. 59. In the stipulation, NESN agreed that Nilda Legassa could access up to $31,236.77. By that time, the United States had already seized $46,000 which had been held in the 4170 Account. Accordingly, the stipulation further provided: "for avoidance of doubt, to the extent that any funds that were subject to the Jan. 19, 2022 Attachment have been seized by the United States Department of Justice are returned to the Credit Union, they shall remain subject to the Jan. 19, 2022 Attachment." See id., at p. 1.

8

On the basis of this chronology, the United States argues that even if Legassa should prevail in a Monsanto hearing, by agreement of Legassa and NESN, the $46,000 would remain subject to the January 19 Attachment and hence be unavailable to Legassa. [Dkt. No. 48, at pp. 7-8]. Legassa argues that a court order releasing the funds is independent of the stipulation; in effect, that the United States would not be "return[ing]" the funds.

Both positions have some merit. Legassa persuasively argues that the attachment order does not extend to the $46,000 generally, but only to the 4170 Account, and hence a court order directing the United States to release seized funds to Legassa is materially different than the United States returning the funds to the Credit Union. [Dkt. No. 56 at pp. 3-4]. On the other hand, NESN agreed to release only part of the funds subject to the January 19 Attachment. Moreover, the January 19 Attachment governs not only the 4170 Account, but any accounts held by Legassa and Nilda at the Credit Union. See New England Sports Network, Dkt. No. 10. The parties, including Legassa, accepted that if the United States relinquished control of the $46,000 to the Credit Union, it was to remain subject to the Attachment. Having received a $30,000 benefit, there is tension between Legassa's stipulated agreement, and his pursuit of the funds by another means.

In any case, whether or not Legassa's interpretation of the stipulation is correct, Legassa has failed to demonstrate to this Court's satisfaction that he is without assets to pay for his criminal defense or living expenses.

**Conclusion**

For all these reasons, the motion for a Monsanto hearing is denied.

    / s / David H. Hennessy
David H. Hennessy
United States Magistrate Judge