IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 22-CR-10038-IT |
| | ) | |
| ARIEL LEGASSA, | ) | |
| | ) | |
| Defendant | ) | |

**GOVERNMENT'S TRIAL BRIEF**

The government submits this trial brief in the above-captioned case in anticipation of the trial scheduled to begin October 30, 2023.

**I.      FACTUAL AND PROCEDURAL OVERVIEW**

The Indictment charges the defendant, Ariel Legassa, with a scheme to defraud the New England Sports Network ("NESN"), of over $575,000.  *See* Indictment, ECF No. 13.  The defendant is charged with seven counts of mail fraud, in violation of 18 U.S.C. § 1341, and three counts of unlawful monetary transactions, in violation of 18 U.S.C. § 1957.  A summary of the facts of this case follows.

*The Scheme to Defraud*

The defendant worked at NESN as the vice president of digital operations from approximately September 2019 through January 2022.  The defendant oversaw NESN's efforts to update its website and mobile application.  In connection with these projects, the defendant selected vendors to work with NESN.  In December 2021, the defendant began negotiating with a new vendor, Alley Interactive LLC, to assist with improving NESN's website.  Alley Interactive LLC is based in New York, NY ("Alley NY").

1

As NESN and Alley NY continued to negotiate a contract, on February 11, 2021, the defendant incorporated a fake business, Alley Interactive LLC, in Connecticut ("Alley CT"). This business conducted no actual work and had no relationship with Alley NY. Shortly after incorporating Alley CT, the defendant opened a bank account in the name of Alley CT at Santander bank ("the Santander Account")—he was the only signatory for the account. The defendant also created an email address for Alley CT and opened a post office box to receive mail.

On March 3, 2021, NESN and Alley NY signed a Master Services Agreement ("MSA") and associated Statement of Work #1 to begin website development. In June 2021, NESN and Alley NY agreed to Statement of Work #2, which outlined additional work that Alley NY would perform for NESN.

Less than one week after signing the MSA, the defendant emailed two invoices, totaling $110,000, to Leatha Fisher (payroll and accounts payable supervisor) that directed NESN to remit payment to Alley CT (not Alley NY). The invoices contained Alley NY's logo and did not list a company address; however, in the email to Fisher, the defendant instructed that payments should be sent to Alley CT's PO Box. On April 1, 2021, NESN mailed a check for $110,000 to Alley CT. This was the first payment made to either Alley NY or Alley CT.

On April 8, 2021, the defendant emailed Fisher and directed her to set up two different accounts—one for Alley NY and one for Alley CT. The defendant falsely represented that Alley had "two entities working together, but separately incorporated" and that they "plan[ed] to merge the two entities at the end of the year." Fisher followed the defendant's instructions. Going forward, the defendant then directed Fisher to remit payment on certain invoices to Alley NY or Alley CT. In connection with these efforts, the defendant created fraudulent invoices that featured the Alley NY logo but listed the Alley CT address. Between March 2021 and January 2022, the

defendant created and approved several fraudulent invoices for payment to Alley CT that totaled $575,500.

In early January 2022, NESN learned that the defendant was embezzling funds through the Alley CT entity. NESN immediately fired the defendant and shortly thereafter, filed suit against him. *See New England Sports Network et al. v. Ariel Legassa*, 22-cv-10224-MJJ (D. Mass).

***Spending of NESN Funds***

The defendant deposited the Alley CT checks into the Santander Account. He then used the funds for personal expenses. For example, he paid off a loan of approximately $50,000 for a Tesla and a loan of approximately $26,000 loan for a Piper airplane. He made almost $250,000 in credit card payments related to charges for home improvement projects and other items. He also transferred more than $170,000 to other bank accounts and used those funds to, among other things, pay off additional car loans, personal loans, and a home equity loan.

**II.     MOTIONS IN LIMINE**

The government has previously filed the following motions in limine with the Court:

- **Admissibility of Business Records.** The government filed a motion in limine for a pretrial ruling on the admissibility of a large number of business records. ECF No. 97. The defendant has agreed that records from all third-party entities, other than NESN, are authentic business records. ECF No. 98. The defendant has reserved the right to object to the admissibility of these records on all other grounds. *Id.*

- **Civil Litigation**. The government filed a motion in limine to preclude certain evidence and argument related to the ongoing civil litigation between the defendant and NESN. ECF No. 98. To date, the defendant has not filed an opposition to this motion. With respect to one of the issues set forth in the motion, it is the government's

understanding that the defendant intends to elicit testimony related to the defendant's claims of purported racial discrimination by NESN employees. The Court should preclude this line of questioning.

- **Victim Loss**. The government filed a motion in limine to preclude the defendant from eliciting testimony or making arguments related to the fact that the victim (NESN) has largely been reimbursed for its loss. ECF No 115.

The Defendant has previously filed the following motions in limine with the Court:

- **Post-Arrest Interview**. The defendant moved to preclude certain statements made by law-enforcement agents during a recorded post-arrest interview of the defendant. ECF No. 111. The government does not intend to offer the recording in its case-in-chief and as such, the defendant's motion is moot.

- **Redaction of Personal Financial Information**. The defendant moved to preclude certain financial records, alleging the records are an invasion of his family's privacy. ECF No. 111. As set forth in the government's opposition, assuming that the Court allows the government's summary financial exhibits (described below) in evidence, there will be no need for the government to introduce the vast majority of the underlying financial records. This should obviate the defendant's concerns. Further, the information is relevant to show both the movement of the stolen funds and the motive for the fraud. Even if the government were to introduce the underlying records, the government is unaware of—and the defendant has failed to identify—any particularly sensitive purchases that may unnecessarily embarrass the defendant.

## III.  OTHER FORESEEABLE EVIDENTIARY ISSUES[1]

The government has identified the following foreseeable evidentiary issues at trial.

### a. The Government May Introduce Defendant's Statements as well as Statements of Third Parties that Provide Necessary Context for Defendant's Statements.

The government will seek to introduce certain statements by the defendant, such as certain emails exchanges with NESN and Alley NY employees.  The defendant's statements, if offered by the government, are non-hearsay because they are statements of a party opponent.  Fed. R. Evid. 801(d)(2)(A).

The government may also introduce the emails sent to the defendant in order to provide necessary context or background to understand the defendant's admissions.  Evidence is not hearsay if offered for the limited purposes of providing "background" or "context."  *See, e.g.*, *United v. Page*, 521 F.3d 101, 106 (1st Cir. 2008); *United States v. Catano*, 65 F.3d 219, 225 (1st Cir. 1995) (defendant's part of conversations admissible as non-hearsay admissions of a party and cooperator's part of the conversations admissible to place admissions into context and make them intelligible to the jury); *United States v. Castro-Lara*, 970 F.3d 976, 981 (1st Cir. 1992).  The same principle applies to emails to the defendant that pose questions, issue instructions, or make suggestions because such expressions are not offered for the truth of their contents, but instead to provide context for defendant's response (or lack of response).  *See, e.g.*, *United States v. Vest*, 842 F.2d 1319, 1330 (1st Cir. 1988) (noting that a question is not hearsay); *United States v. Murphy*, 193 F.3d 1, 5 (1st Cir. 1999) (same, for instructions).

---

[1] The parties have filed a joint exhibit list.  The exhibit list only contains exhibits offered by the government.  The defense has not listed any exhibits.

b.  **The Defendant May Not Introduce His Own Prior Statements.**

Unlike the government, the defendant may not offer or elicit his prior statements at trial because those statements are hearsay. *United States v. Rivera-Hernandez*, 497 F.3d 71, 80 (1st Cir. 2007) (citing Fed. R. Evid. 801, 802). The defendant is not permitted to circumvent this rule by eliciting his statements through the cross-examination of other witnesses. *United States v. Bauzo-Santiago*, 49 F. Supp. 3d 155, 157 (D.P.R. 2014) (prohibiting defendant from eliciting defendant's "out-of-court statement during cross-examination of government witnesses to impeach the witnesses") (citing *Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995) and *United States v. Hudson*, 970 F.2d 948, 956 (1st Cir. 1992)). Further, merely because the government presents only a subset of defendant's out-of-court statements, the defendant is not entitled to present his other statements absent a need to avoid "misunderstanding or distortion." *United States v. Simonelli*, 237 F.3d 19, 28 (1st Cir. 2001) (rule of completeness "does not permit the admission of otherwise inadmissible evidence simply because one party has referred to a portion of such evidence, . . . rather, it operates to ensure fairness where a misunderstanding or distortion created by the other party can only be averted by the introduction of the full text of the out-of-court statement").

c.  **The Government May Introduce Summary Exhibits of Voluminous Records.**

The government intends to call FBI Forensic Accountant Rebecca Curtin and, through her, admit summary exhibits of voluminous financial records. Ms. Curtin has reviewed bank records for various accounts, loan records, credit card statements, and related expenses and has drafted summary exhibits of those records that are independently admissible pursuant to Fed. R. Evid. 1006. The summary exhibits will detail the defendants' financial activity in 2021 after he began depositing checks from NESN into the Santander Account.

Federal Rule of Evidence 1006 provides that a party may summarize the contents of writings, recordings, photographs, financial records, and other documents "so long as the summary is accurate, the underlying documents are made available to the other parties, and both the summary and the source materials are admissible." *United States v. Appolon*, 695 F.3d 44, 61 (1st Cir. 2012) (citing Fed. R. Evid. 1006) (affirming admission of summary exhibits that obviated the need for "the jury to sift through[] mortgage and sale records for each of the twenty-one properties involved in appellants' scheme[] and also facilitated tracing the scheme's proceeds"); *see also United States v. Milkiewicz*, 470 F.3d 390, 396–98 (1st Cir. 2006).

Charts that summarize financial "transactions" and "calculations," and "trace the documentary evidence," are admissible under Rule 1006 and should be made available to the jury during their deliberations. *See, e.g., United States v. McElroy*, 587 F.3d 73, 82 (1st Cir. 2009)("Our case law permits the use of summary tools to clarify complex testimony and evidence."); *United States v. DeSimone*, 488 F.3d 561, 577 (1st Cir. 2007). *United States v. Nivica*, 887 F.2d 1110, 1125 (1st Cir. 1989) (summary exhibits admissible into evidence where information in the exhibit is based on one or more voluminous business records). These exhibits are admissible either individually or in addition to the underlying records. *Milkiewicz*, 470 F.3d at 396–97 ("[W]hile in most cases a Rule 1006 chart will be the *only* evidence the fact finder will examine concerning a voluminous set of documents, in other instances the summary may be admitted *in addition to* the underlying documents to provide the jury with easier access to the relevant information.") (citations omitted).

The government also intends to elicit testimony from Ms. Curtin that describes and explains the summary exhibits. *McElroy*, 587 F.3d at 81 ("[S]ummary witness testimony may be permitted pursuant to Rule 611(a).") (citing *Milkiewicz*, 470 F.3d at 397–98, and *United States v.*

7

*Stierhoff*, 549 F.3d 19, 27 (1st Cir. 2008)); *Appolon*, 695 F.3d at 63 (allowing summary witness testimony "introducing and explaining the summary charts [the summary witness] prepared").

                                            Respectfully submitted,

                                            JOSHUA S. LEVY
                                            Acting United States Attorney

                                 By: */s/ Benjamin A. Saltzman*
                                       BENJAMIN A. SALTZMAN
                                       MACKENZIE A. QUEENIN
                                       Assistant United States Attorneys

## CERTIFICATE OF SERVICE

      I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF).

Dated: October 13, 2023                                     By: */s/ Benjamin A. Saltzman*
                                                                BENJAMIN A. SALTZMAN
                                                                Assistant United States Attorney