UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.  22-CR-10038-IT |
| | ) | |
| ARIEL LEGASSA | ) | |

**Defendant's Opposition to the Government's Motion
in Limine to Preclude Evidence and Argument
Related to Civil Litigation Between the Defendant and NESN**

Defendant Ariel Legassa hereby opposes the Government's Motion in Limine to Preclude Evidence and Argument Related to Civil Litigation Between the Defendant and NESN (the "Government's Motion"). The civil suit is relevant to the bias and motivation of NESN witnesses, almost all of whom are senior officers and or hold senior management positions. It is their responsibility to conduct themselves in a manner consistent with what is best for NESN. A major component of their responsibilities is to protect and promote NESN's welfare. The NESN witnesses essentially have a stake or interest in the outcome of the criminal case. A guilty verdict here will make it impossible for Legassa to litigate the civil case.

The "bias of a witness is an essential element of cross-examination, and the court cannot deprive the jury of crucial information on bias." *U.S. v. Colon-Miranda*, 992 F. Supp. 86, 90 (D.P.R. 1998). *See also United States v. Tracey*, 675 F.2d 433, 437 (1st Cir. 1982) ("[b]ecause a witness' bias is 'always relevant as discrediting the witness and affecting the weight of his testimony,' the Supreme Court has 'recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination") (citation omitted); *U.S. v. Akitoye*, 923 F.2d 221, 224-25 (1st Cir. 1991) ("[b]ias on

the part of a witness is an allowable and established ground for inquiry on cross-examination under the Federal Rules of Evidence").

The First Circuit observed that because "objectivity is always material to the assessment of credibility, we, and other federal courts, have been hospitable to the point of liberality in admitting evidence relevant to a witness' bias." *Akitoye*, 823 F.2d at 225 (citations omitted). A trial court must allow sufficient inquiry into witness bias: "[t]he bias of a witness is an essential element of cross-examination, and the court cannot deprive the jury of crucial information on bias. The court may limit inquiries into bias only after it has been clearly explored." *Colon-Miranda*, 992 F. Supp. at 90. *See also Tracey*, 675 F.2d at 437 ("[a]lthough the trial judge retains the traditional discretion to limit the scope of cross-examination, discretion in the area of bias evidence becomes operative only after the constitutionally required threshold level of inquiry has been afforded the defendant") (citations omitted). The First Circuit has cautioned that "the judge's discretionary limitation of cross-examination must be done 'with the utmost caution and solicitude for the defendant's Sixth Amendment rights.'" *Tracey*, *supra*.

The government has asked the court here to permit Legassa to essentially ask two questions to NESN senior management only: (1) is there a civil suit; and (2) how much does it seek in damages. If the court were to do so, it clearly would commit constitutional error requiring reversal. The cases discussed above unquestionably permit Legassa to go beyond eliciting those two facts in exploring witness bias. Because cross-examination is a fluid concept and its scope is dependent upon what a witness actually says on direct and on cross, the court should not set

limits prior to trial as to when Legassa will hit the outer limit, which should be liberally set, in his questioning on the witness bias as a result of the civil case NESN has brought.[1]

The government also seeks to completely foreclose any inquiry or argument about racial discrimination on the part of NESN and its employees. Racial discrimination or animus is, of course, a form of bias. *See United States v. Howard*, 66 F.4th 33, 46 (1st Cir. 2023) (addressing the credibility of a law enforcement officer's search warrant application and noting "[r]acial bias by a police officer could certainly provide a basis for challenging the reliability or credibility of an officer's testimony"). Racial bias arguably is among the most odious forms of bias and is notoriously difficult to uncover.

Legassa witnessed McGrail regularly telling inappropriate racist jokes, which he tried to temper or excuse by noting that he was Irish. McGrail regularly made reference to the way that Latino people would do things, and would comment that it was different from the way "we" do things.

Legassa also witnessed Guilbault occasionally telling inappropriate racist jokes, which he made no attempt to temper or excuse. When Legassa and two other NESN vice presidents unsuccessfully pushed for many months for the promotion of an African American employee, Guilbault said that the employee was not one of us, which Legassa understood as a tacit admission that the promotion would not happen because the employee was African American.

---

[1] NESN, of course, brought the civil suit. It did not have to. NESN and its lawyers, Jones Day, have been working closely with the government to help the government prepare for the trial of the criminal matter. NESN is free to dismiss its civil suit at any point if it fears that the suit would impact the credibility of NESN officers and senior management who will testify as government witnesses in the criminal case.

Subsequent to the refusal of McGrail and Guilbault to promote the African American employee, NESN retained a law firm to conduct an internal investigation into racial insensitivity at NESN that identified other instances of inappropriate treatment of members of protected classes and a general discomfort among members of those classes with the workplace environment. After that, NESN brought in a series of consultants, one that specialized in improving culture, diversity, equity, and inclusion awareness. The consultant conducted racial sensitivity and diversity training.

For the foregoing reasons, Legassa has a good faith basis to ask McGrail and Guilbault whether they made racially insensitive comments to Legassa about Latino and African American employees are a certain way that is different from McGrail, Guilbault, and the way things are done at NESN.

Legassa also should be permitted to ask other NESN employees whether there is any reason they can think of why McGrail and Guilbault would be biased against Legassa. *See Akitoye*, 923 F.2d at 224. There, the court held that it was permissible for a prosecutor to ask the defendant on cross-examination "do you know of any reason why [a government witness] would lie about you." *Id* at 223. The court held that the question was proper and distinguished it from the forbidden inquiry of whether one witness believes that another witness is telling the truth: "The follow-on question, however, did not solicit an opinion on credibility; rather, it inquired into the existence of any known basis for bias on the part of a key witness." *Id*. at 224.

The government's request that the court preemptively cut off all inquiry into racial animus by McGrail, Guilbault, or at NESN, would violate Mr. Legassa's Sixth Amendment right to confront the government's witnesses as to bias. The court should not set limits prior to trial as

4

to how far Legassa can go to explore racial bias and should intervene only if, and when, Legassa reaches the threshold constitutional limit.

        ARIEL LEGASSA
         By his attorney,

/s/ *E. Peter Parker*
E. Peter Parker
 B.B.O. #552720
Law Office of E. Peter Parker
The Wheelhouse at Bradford Mill
33 Bradford St
Concord, MA  01742
(617) 742-9099
peter@parkerslaw.com

Certificate of Service

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 14, 2023.

/s/ *E. Peter Parker*
E. Peter Parker